UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Case No. 24-1739 (ADM/DLM)

Mashal Sherzad,

                    Plaintiff,

vs.                              **FIRST AMENDED COMPLAINT**

Melinda Pettigrew, Thai Nguyen,
Timothy Beebe, Rachel Croson,
John Doe (whose true name is
unknown), Jane Roe (whose true name is
unknown), and University of Minnesota.

                    Defendants.

Plaintiff Mashal Sherzad, for her First Amended Complaint against above-named Defendants, state and allege as follows:

## I. INTRODUCTION

1. This is a civil rights action arising from Defendants' termination of Plaintiff Mashal Sherzad from her employment at University of Minnesota for exercising her right to free speech unrelated to her employment or employment duties. Specifically, Ms. Sherzad committed the "offense" of posting on social media a photograph of her at protest against Israel brutal and genocidal war against Palestinians in Gaza. In response to a complaint about Ms. Sherzad's social media posts from a person unconnected to the University of Minnesota or Ms. Sherzad's employment, Defendants terminated Ms. Sherzad. Ms. Sherzad's causes of action include violations of her constitutional rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and discrimination under state and federal law. Ms. Sherzad seeks money damages and injunctive relief.

## II. PARTIES

2. Plaintiff Mashal Sherzad, a 29 year old Muslim female of primarily Afghan descent, is a resident of Hennepin County, Minnesota. Her place of employment at times relevant to this case was in Minneapolis, Hennepin County, Minnesota.

3. Defendant Melinda Pettigrew is and at times relevant to the events giving rise to this case, was the Dean of the University of Minnesota School of Public Health located in Hennepin County, Minnesota. At all times relevant hereto, she was acting under color of state law, and in the course and scope of her employment as a University of Minnesota official. Defendant Pettigrew is being sued in her personal and official capacity.

4. Defendant Thai Nguyen is and at all times relevant to the events giving rise to this case, was the Director of Human Resources of the University of Minnesota School of Public Health located in Hennepin County, Minnesota. At all times relevant hereto, he was acting under color of state law, and in the course and scope of his employment as a University of Minnesota official. Defendant Nguyen is being sued in his personal and official capacity.

5. Defendant Timothy Beebe, at times relevant to the events giving rise to this case, was the Interim Dean of the University of Minnesota School of Public Health located in Hennepin County, Minnesota. At all times relevant hereto, he was acting under color of state law, and in the course and scope of his employment as a University of Minnesota official. Defendant Beebe is being sued in his personal and official capacity.

6. Defendant Rachel Croson, at times relevant to the events giving rise to this case, was the Executive Vice President and Provost of the University of Minnesota, located in Hennepin County, Minnesota. At all times relevant hereto, she was acting under color of state

law, and in the course and scope of her employment as a University of Minnesota official. Defendant Crosson is being sued in her personal and official capacity.

7. Defendant John Doe, whose true name is unknown, is and at times relevant to the events giving rise to this case, was an administrative official at the University of Minnesota who made the decision or participated in the decision to terminate Plaintiff from employment. At all times relevant hereto, he was acting under color of state law, and in the course and scope of his employment as a University of Minnesota official. Defendant Doe is being sued in his personal and official capacity.

8. Defendant Jane Roe, whose true name is unknown, is and at times relevant to the events giving rise to this case, was an administrative official at the University of Minnesota who made the decision or participated in the decision to terminate Plaintiff from employment. At all times relevant hereto, she was acting under color of state law, and in the course and scope of her employment as a University of Minnesota official. Defendant Doe is being sued in her personal and official capacity.

9. Defendant University of Minnesota is an agency of the State of Minnesota with a campus located in Hennepin County.

### III.  FACTS

10. On or about October 19, 2023, the University of Minnesota School of Public Health offered Plaintiff Mashal Sherzad a job at the position of Program Manager for Diversity, Equity and Inclusion. She began working in her position on or about October 30, 2023.

11. At no time during Ms. Sherzad's employment at the University of Minnesota were there any complaints or criticisms raised regarding her job performance.

12. During Ms. Sherzad's time outside of work, she posted political commentary on social media expressing her opinions about Israel's oppression of Palestinians, which included her outrage at Israel's ongoing genocide in Gaza.

13. Ms. Sherzad's social media posts included several photographs of a demonstration in Barcelona, Spain against Israel's attacks in Gaza which she attended. Ms. Sherzad posted the photographs on her private Instagram account, but unbeknownst to her, they were automatically re-posted on her Facebook account.

14. Upon information and belief, no one who associated with Ms. Sherzad at work made any complaints or otherwise expressed any problems with her social media posts.

15. On or about December 11, 2023, a member of the public sent an email to various University of Minnesota officials, including but not limited to the President of the University of Minnesota, the Dean of the School of Public Health, the Director of Human Resources of the School of Public Health, and Ms. Sherzad's manager. The email attached copies of photographs of the protest taken from Facebook and Ms. Sherzad's political commentary. The author specifically complained about a photograph with Ms. Sherzad that showed in the background an Israeli flag with small red swastikas painted on it. The author of the email suggested that based on Ms. Sherzad's social media posts, it was not appropriate for her to be working at her position in DEI.

16. Upon information and belief, the author of the email does not work at the University of Minnesota, is not a student of the University of Minnesota, and has no current affiliation with the University, much less any involvement with the School of Public Health.

17. In response to the email complaining about Ms. Sherzad's social media

posts, her manager at DEI met with Ms. Sherzad to discuss them. Her manager sent and email to the interim dean and the HR director summarizing the meeting. She explained that Ms. Sherzad's family is Afghani and Muslim, and that she provided context for the photos and her interpretation. Ms. Sherzad's manager found a photograph of Ms. Mashal with an Israeli flag in the background with swastikas painted on it to be problematic, and asked Ms. Sherzed to take the post down. Her manager "didn't personally find any of the other posts objectionable." The manager reported having a conversation about Ms. Sherzad's rights and responsibilities as an employee. She did not recommend any disciplinary action against Ms. Sherzad.[1]

18.     Executive Vice President and Provost Rachel Croson sent an email on December 11, 2023 stating," Looks like that's on her personal Facebook page, so there's not much we can or should do."

19.     Further correspondence by Defendant Thai Nguyen on December 12, 2023 indicates that in response to the email complaining about Ms. Sherzad's social media posts, the Office of General Counsel ordered an investigation into the social media posts. Ms. Sherzad was to be put on paid administrative leave effective immediately pending completion of the investigation. The email further states that the President and Provost approved these actions.

20.     Defendant Nguyen sent correspondence to Ms. Sherzad that she was immediately being placed on administrative leave, that she was relieved of all job duties, an

---

[1] This Complaint relies on documents and correspondence produced by the University of Minnesota in response to Data Practices Act requests. The University redacted substantial portions of documents it produced, and it is unknown how many responsive documents it withheld. To the extent that facts are missing or incomplete, it is likely attributable to the University's refusal to disclose requested information.

access to University facilities was suspended.

21.     Defendant Nguyen and another human resources employee conducted an interview with Ms. Sherzad regarding her social media posts on or about December 20, 2023. Ms. Sherzad was completely cooperative and forthcoming in answering all questions.

22.     Ms. Sherzad explained that she only intended to post the photographs on her private Instagram account where they would not be visible to the public. She had been unaware that they were also posted on her Facebook page. Ms. Sherzad confirmed that she had deleted the post containing the Israeli flag with swastikas.

23.     Ms. Sherzad further informed Nguyen that she had nothing to do with the Israeli flag containing swastikas. It belonged to an other demonstrator who had identified himself as Jewish.

24.     Ms. Sherzad explained to Nguyen that the author of the complaining email had been previously harassing her on Facebook and had also called Ms. Sherzad's father and threatened his life.

25.     In her meeting with Defendant Nguyen, Ms. Sherzad was apologetic about accidently posting a photo that University officials claimed was harmful. She informed Nguyen that she had temporarily deactivated her social media accounts to prevent any further harm. Ms. Sherzad explained that she learned her lesson about avoiding the publication of symbols that could be interpreted as hateful.

26.     Notwithstanding Ms. Sherzad's contrition about her social media post and willingness to conform her conduct to her employer's standards, she was well within her protected First Amendment Rights to post all of the material that was on her social media

accounts. She was fully entitled to express her opinions and to publish the political expressions of others regarding a matter of strong public concern on her personal social media accounts outside of work. This included the photograph of the Israeli flag with small red swastikas painted on it that another demonstrator was displaying. While this image was not even Ms. Sherzad's own statement - which she clearly explained, there was nothing illegal about it. It was an expression of an opinion that was protected by the First Amendment.

27. Further, even though the First Amendment does not include an exception for "hateful symbols," the image in question was not hate speech but legitimate political commentary that could be rationally justified and was within the parameters of the often heated public discourse on the issue in question. Charges of genocide against Israel for its actions in Gaza have been presented to the International Court of Justice (ICJ). The ICJ has found there is a plausible case that Israel is committing genocide, and as a result there are ongoing proceedings to determine whether Israel is in fact committing genocide.  Gaza, an area the size of Detroit which has a population of more than two million people, one of the most densely populated areas in the world, is surrounded by a fence and guarded by the Israeli military. Residents cannot leave the area without permission from Israeli authorities. Israel controls the food, medicine, and all other items that enter into Gaza, and purposely allowed an inadequate supply of food prior to the current military siege. In response to organized efforts by Gaza residents to cross the security fence as part of a non-violent civil disobedience campaign in 2017-2018, the Israeli military shot demonstrators with live ammunition, killing more than 200 and wounding tens of thousand of people. Since the bombing and invasion after October 7, 2023 which has so far killed more than 35,000 people maimed many times more and made a majority of the population homeless, there

is a danger that most people will starve. It is not disputed that Gaza is effectively an open-air prison. A plethora of reasoned commentary describes Gaza as a concentration camp or points out close comparisons to the Warsaw Ghetto during the Nazi occupation of Poland. Top Israeli officials have also made statements indicating genocidal intent. For example the Israeli defense minister stated on October 9, 2023 that he had ordered a "complete siege" of Gaza City and there would be "no electricity, no food, no fuel." The next day he stated, "I have release all restraints . . . We are fighting human animals. . . . Gaza won't return to what it was before. There will be no Hamas, We will eliminate everything."[2]

      28.    Loose comparisons to the Holocaust or Nazis are frequently made by defenders of Israel. It is common to compare Hamas massacres of Israelis on October 7, 2023 to the Holocaust. Yet the Israeli military had committed exponentially more killings and destruction, predominantly against civilians, since October 7, thereby making comparisons to the Nazis at least as justified. Jonathan Greenblatt, CEO of the Anti-Defamation League, the most prominent Jewish purported civil rights organization, has compared Students for Justice in Palestine, a national student activist organization with chapters on college campuses throughout the United States, to the Hitler Youth.[3] Greenblatt also equated wearing a keffiyeh, a traditonal Palestinian scarf, to a swastika.[4] In the current discourse, it is not remarkable to make

---

[2] ICJ Order on Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Stip, South Africa v. Israel, January 26, 2024 at page 17.

[3] www.democracynow.org/2024/2/26/anti_terror_laws_palestine_israel

[4] mondoweiss.net/2024/04/jonathan-greenblatts-racist-keffiyeh-smear-is-another-chapter-in-the-adls-war-on-palestinians/

comparisons to Nazis, unless one employs a double standard.

29. During Defendant Nguyen's interview with Ms. Sherzad, he stated (based on a recording provided) that the decision about her employment would be made by the President or Provost of the University.

30. In response to the investigation of Ms. Sherzad, multiple people associated with the University submitted positive letters of reference.

31. Defendant Beebe, in an email to Nguyen on December 27, 2023 stated that he would "like to terminate" Ms. Sherzad. Beebe stated he thought that Defendant Pettigrew agreed but is was her call.

32. Defendant Croson participated in a meeting with Pettigrew, Nguyen and other administrators to discuss the termination of Ms. Sherzad. According to her deposition testimony, Croson supported the decision of Pettigrew to terminated Sherzad.

33. On January 10, 2024, Defendant Nguyen sent an email to Defendant Pettigrew attaching "the final draft of the termination letter." In an email exchange earlier that day, Nguyen and Pettigrew discussed how the termination would be presented. Nguyen discussed giving Ms. Sherzad a chance to resign. However, that option was not ultimately presented.

34. On or about January 12, 2024, Defendants Nguyen and Pettigrew met with Ms. Sherzad via Zoom video. It was stated by Defendants and on the Zoom video that the meeting was being recorded. However, the University now claims that it does not have a recording of the meeting.

35. At the January 12, 2024 meeting, Defendants informed Ms. Sherzad that she was being terminated. They both appeared uncomfortable to Ms. Sherzad, and suggested the

decision was made at a higher level.

36. The University has not provided information in response to Data Practices Act requests which clearly identifies who made the decision to terminate Ms. Sherzad. Ms. Sherzad reserves the right to add Defendants after obtaining information through discovery about other persons involved in her termination.

37. At the termination meeting, Defendant presented Ms. Sherzad with a formal letter of termination, which had apparently been drafted by Nguyen but signed by Pettigrew.

38. The formal letter of termination was dated January 10, 2024. It stated that Ms. Sherzad's last day of work was January 10, and she would then be on unpaid leave of absence and formally terminated on January 24, 2024.

39. The termination letter stated that the termination was based on the photo on social media which showed Ms. Sherzad standing in front of the Israeli flag with swastikas painted on it. The letter acknowledged that the social media posts were reported by "an outside party." It conceded "the rights of University employees to comment on matters of public concern." The letter asserted that "continuing your employment would create a real risk of significant disruption."

40. The termination letter did not explain how Ms. Sherzad's personal posts on social media in any way disrupted any activities at the School of Public Health or University where the posts were reported by an outside party and no one associated with the University had made any complaints.

41. The termination of Ms. Sherzad violated her First Amendment Right to

Free Speech. It is clearly established law that as a public employee, she has a right to comment on matters of public concern outside of the workplace and in contexts unrelated to her job duties. There is no evidence whatsoever that her commentary caused disruption to the workplace.

42. Upon information and belief, there are numerous University employees who are not Muslim or Asian who express political opinions outside of the workplace and are not disciplined much less terminated.

43. As a result of Defendants' actions, Plaintiff Sherzed has suffered substantial loss of income and other economic loss both past and future, physical, mental and emotional distress, embarrassment and humiliation, harm to her reputation, and other losses and damages, altogether **well in excess of** $75,000.

## IV.  CAUSES OF ACTION

44. Plaintiff hereby realleges and incorporates by reference all of the facts and allegations contained in paragraphs 1 through 43 of this Complaint.

45. **COUNT 1 - VIOLATION OF 42 U.S.C. § 1983 - FIRST AMENDMENT - FREE SPEECH.**  The individually named Defendants, acting under color of state law, deprived Plaintiff of her rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by suspending and terminating her from employment for exercising her Right to Free Speech protected by the First Amendment to the United States Constitution.

46. **COUNT 2 - VIOLATIONS OF 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT - EQUAL PROTECTION.**  The individually named Defendants, acting under color of state law, have deprived Plaintiff of her rights, privileges and immunities secured by the

Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Fourteenth Amendment Right to Equal Protection by subjecting her to standards resulting in termination of her employment which differs from treatment accorded to similarly situated citizens.

47. **COUNT 3 - VIOLATIONS OF 42 U.S.C. § 1983 - CONSPIRACY.** The individually named Defendants, acting under color of state law, deprived Plaintiff of her rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by conspiring among themselves and with others to violate Plaintiff's rights under the First and Fourteenth Amendments, in connection with their unlawful suspension and termination of her employment.

48. **COUNT 4 - VIOLATIONS OF 42 U.S.C. § 1981 - DISCRIMINATION.** The Defendants were motivated by unlawful racial bias and racial considerations when suspending and terminating Plaintiff for exercise of her right to free speech outside of the workplace, specifically in expressing opinions related to her ethno-religious identity. Plaintiff was denied the equal right to make and enforce contracts as enjoyed by white citizens in violation of 42 U.S.C. § 1981.

49. **COUNT 5 - VIOLATIONS OF MINNESOTA HUMAN RIGHTS ACT.** Defendant University of Minnesota, by its above described actions, through its agents, discriminated against Plaintiff Sherzad based on her race, color, creed, religion and national origin in employment by discharging her, in violation of Minn. Stat. § 363A.08, subd. 2.

50. As a result of Defendants' above-described illegal conduct, Plaintiff has suffered the damages described in paragraph 43 of this Complaint.

## V.  RELIEF REQUESTED

WHEREFORE Plaintiff prays for Judgment in her favor as follows:

1. Awarding judgment in favor of Plaintiff, and against the Defendants and each of them jointly and severally in an amount **in excess of** $75,000.00 as and for compensatory damages.

2. Awarding punitive damages against Defendants.

3. Awarding Plaintiff all of her costs and disbursements herein, and prejudgment interest.

4. Awarding Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and Minn. Stat. § 363A.33, subd. 7.

5. Awarding Plaintiff treble damages and ordering University of Minnesota to pay a civil penalty pursuant to Minn. Stat. § 363A.29, subd. 4 and  § 363A33, subd. 6.

6. Granting injunctive relief consisting of the immediate reinstatement of Plaintiff to her previously held position of employment with the University or a comparable or higher position.

7. Such other and further relief as the Court may deem just and proper.

Dated:  October 15, 2024                                              LAW OFFICE OF JORDAN S. KUSHNER

                                                                                     By s/Jordan S. Kushner
                                                                                          Jordan S. Kushner, ID 219307
                                                                                          Attorney for Plaintiff
                                                                                          431 South 7th Street, Suite 2446
                                                                                          Minneapolis, Minnesota  55415
                                                                                          (612) 288-0545
                                                                                          jskushner@gmail.com