UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Case No. 24-1739 (ADM/DLM)

_____

Mashal Sherzad,

                    Plaintiff,

vs.

Melinda Pettigrew, Thai Nguyen,
Timothy Beebe, Rachel Croson,
John Doe (whose true name is unknown),
Jane Roe (whose true name is unknown),
and University of Minnesota.

                    Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT**

_____

## INTRODUCTION

Defendants seek to exclude testimony by Plaintiff's expert, Barry Trachtenberg, a professor of Jewish history who had a PhD and has been teaching for twenty years. Defendants first assert that Trachtenberg's opinion that the photo that Plaintiff posted on Facebook was not anti-semitic is irrelevant to the case. It is bewildering how Defendants could make such an assertion when they fired Sherzad for the social media post on the grounds that it would be construed as anti-semetic. Defendants further assert that Trachtenberg did not provide a "method" at which he arrived at his conclusions, and that his opinions are within the knowledge of lay jurors. It is clear from Dr. Trachtenberg's extensive report that he drew on his extensive historical and contemporaneous knowledge of the issue that he has developed a scholar, and not necessary known by lay people.

## FACTS

Plaintiff incorporates by reference the facts contained in her Memorandum in Opposition to Summary Judgment.

## ARGUMENT

Plaintiff addresses Defendants' objections to Trachtenberg's report in order.

### I.  AN EXPERT OPINION IS NECESSARY TO REFUTE DEFENDANTS' CHARACTERIZATIONS OF PLAINTIFF'S SOCIAL MEDIA POST.

Defendants' contention that whether Sherzad's post is anti-semtic is irrelevant when they claim that the post justified her termination because it involved a hate symbol that would offend Israelis or Jews is fundamentally contradictory. Defendants seek to advance their interpretations of the photo in question as justification for their actions, while seeking to exclude any evidence disputing their interpretation. Although Defendants did not always use the specific word anti-semitic to describe Sherzad's photo, they do use it and otherwise claim that the fact that it contained what is commonly viewed as a hate symbol meant that it was an expression of hate. Ms. Sherzad is entitled to present evidence from an expert explaining how the photo is not a symbol of hate.

Defendants repeatedly assert in support of summary judgment that the photo was "divisive and inherently disruptive." (Defendants' SJ Memo, Doc. 48 at 16, 19, 20, 23, 24). Timothy Beebe, the interim dean involved in the termination decision testified that he understood the image to be promoting Nazism and was "a clear message of anti-Semitism that

would be a threat to our Jewish population." (Beebe Depo. at 57:18-23).[1]

Melinda Pettigrew who formally made the decision to terminate Sherzad testified that the photo at issue justified termination testified, "Think that the way the swastika is used in this context is a hate symbol." (Pettigrew Depo. at 95:14-22). Pettigrew repeatedly strongly rejected the proposition that a swastika could be used for purposes of political commentary, and not serve as "a symbol of white supremacy and as a hate symbol." (Pettigrew Depo. at 95-111). Pettigrew further testified that people at the University viewing the image might claim to "feel unsafe as a member of the community." (Pettigrew Depo. at 128:9-12).

Thai Nguyen, the HR manager who conducted an investigation, recommended termination and participated in the termination, testified, "whenever I see the swastika it sound to me extremism." (Nguyen Depo. at 35:24-25). Rachel Croson, the University Provost who approved the termination, claimed that the image in question "would be something that would make students who were Jews or Israeli feel that they are not welcome or included" and interpret it as a threat. (Croson Depo. at 44:9-24).

All of the Defendants are claiming that Sherzad's posting of the photo in question justified the termination was anti-semitic, either explicitly using the term or effectively arguing that it can only be interpreted as such. It is therefore completely relevant - and necessary - for Ms. Sherzad to be able to present the testimony of an expert on the subject matter depicted in the photo to explain how it is not anti-semitic, and how in its context, it

---

[1] The deposition excerpts cited in this Memorandum are all attached to the Declaration of Jordan S. Kushner in opposition to Defendants' Motion for Summary Judgment.

is not a symbol of hate.

It is further relevant and necessary for Dr. Trachtenberg to be able to explain in response to Defendants' claims that Jewish or Israeli students would feel threatened by the photo, that comparisons to nazism are common in political discourse in Israel and relating to Israel by persons across the political spectrum. It is relevant and necessary for Ms. Sherzad to have an opportunity to present evidence as to the actual meaning of the image and the justifications for making the comparison. Ms. Sherzad cannot be precluded from presenting evidence disputing Defendants' characterizations of the photo as divisive, offensive, hateful or harmful. The jury should have all information available to make an informed decision about the photo's meaning and implications.

The opinions presented by Dr. Trachtenberg are neither tangential nor confusing to the jury as Defendants assert. His opinion go to the heart of Defendants' purported justifications for their termination of Ms. Sherzad. Defendant's unbelievably claim that the issue is not whether a University employee can criticize Israel but whether Ms. Sherzad's media post was somehow so "disruptive" as to cancel her First Amendment rights. In other words, Defendants is claiming that Ms. Sherzad cannot criticize Israel in a manner that they disapprove of or fear that others might disapprove. Of course this argument shows how they have no valid substantive argument to negate Ms. Sherad's First Amendment rights, but in the context of the argument about the relevancy of the expert, Ms. Sherzad is clearly entitled to present evidence disputing Defendant's

arguments that Ms. Sherzad's photo was somehow so offensive that the First Amendment did not apply.

## II. DR. TRACHTENBERG'S OPINIONS ARE JUSTIFIED WITHIN HIS REPORT.

Defendants complain that Dr. Tracthenberg's report "does not describe an analytical method that he used to arrive at his opinions" but presents an essay. Dr. Trachtenberg's report and attached CV set forth in detail his qualifications and credentials and explains his opinions and the bases for his opinions. Defendants provide no support for their assertion that "Dr. Trachtenberg's method is not accepted in his field." Dr. Trachtenberg is a historian, who draws on history to arrive at his opinions. Defendants provide no explanation as to how his analysis fails to meet "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." (Defendants' Memorandum, Doc. 43 at 11, citing Kumho Tire Co., 526 U.S. 137, 152 (1999)). Dr. Trachtenberg is not a scientist or statistician. He is not required to use methodology from other fields that is not normally used in his own field.

The case relied upon by Defendants, In re Wholesale Grocery Prods. Antitrust Litig., 946 F.3d 995, 1000 (8th Cir. 2019) is inapposite because it addressed the district court's evaluation of a mathematical analysis that it determined to be unreliable and incomplete. In the instant case, Defendants fail to support there assertion that Dr. Trachtenberg's opinions are *ipxe dixit*. He provides his interpretation of the photograph based on his expertise on the issues, and advances various historical and contemporary

5

examples to support his opinions. Defendants do not provide any specific explanation as to how his opinions are unreliable or do not meet the standards in Dr. Trachtenberg's field. "The inquiry as to the reliability and relevance of the testimony is a flexible one." In re Wholesale Grocery Prods. Antitrust Litig., 946 F.3d at 1000. It has been recognized that "historical experts may have 'specialized knowledge' that can assist the trier of fact United States v. Kantengwa, 781 F.3d 545, 561 (1st Cir. 2015).

Defendants' authority explains further, "cases are legion that under Daubert, liberal admission is prevalent, Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014), and '[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility.'" In re Wholesale Grocery Prods. Antitrust Litig., 946 F.3d at 1000 (quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006)). In the absence of any authority supporting Defendant's assertions that Dr. Trachtenberg's testimony is not reliable, the Court should deny the motion to exclude his testimony. At the least the Court should hold a hearing to examine that basis for Dr. Trachtenberg's opinions before making any ruling to exclude.

### III.   DR. TRACHTENBERG OFFERS EXPERT OPINIONS OUTSIDE THE KNOWLEDGE OF MOST LAY JURORS.

Defendants fail to support their suggestion that jurors will be fully capable of assessing the meaning or implications of the photo in question, and not benefit in any way from the assistance of an expert on the subject. This position is particularly ironic since the Defendants themselves had significant gaps in their knowledge of the underlying

subject, and most demonstrated a lack of ability to grasp Ms. Sherzad's (or Dr. Trachtenberg's) understanding of he meaning of the photo. It is likely that many if not most or all juror will be uniformed about the Israel-Palestine conflict/genocide, and will certainly not be attuned to the intricacies of the use of analogies to Nazism when discussing the issue.

Yes, Ms. Sherzad will provide her explanation about the photo. However, Defendants provide no authority that Ms. Sherzad should be precluded from offering the testimony of a scholar in the field to more fully explain the issues and their background, and provide academic support for Ms. Sherzad's position. Clearly Dr. Trachtenberg has knowledge and qualifications to provide relevant information and support for that information that Ms. Sherzad cannot provide.

## CONCLUSION

For the foregoing reasons Ms. Sherzad respectfully requests that the Court deny Defendants' motion to exclude Plaintiff's expert witness.

Dated:  May 13, 2025

                LAW OFFICE OF JORDAN S. KUSHNER

                By s/Jordan S. Kushner
                  Jordan S. Kushner, ID 219307
                  Attorney for Plaintiff
                  Center Village Office Building
                  431 South 7th Street, Suite 2446
                  Minneapolis, Minnesota  55415
                   (612) 288-0545
                  Jskushner@gmail.com